**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| STANT USA CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-01908-TWP-TAB |
| | ) | |
| BRIGGS & STRATTON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| BRIGGS & STRATTON CORPORATION, | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STANT USA CORP., | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**ENTRY ON CLAIM CONSTRUCTION**

This matter is before the Court for construction of patent terms relative to the design of small combustion engine fuel caps, one purpose of which is to remove hydrocarbons from fuel vapors before they are released into the atmosphere. The Plaintiff/Counter-Defendant in this matter is Stant USA Corp. ("Stant"), and the Defendant/Counter-Plaintiff is Briggs & Stratton Corporation ("Briggs"). On January 22, 2015, the Court conducted a *Markman* hearing at which time the parties presented oral arguments as to the proper construction of four disputed terms in Stant's U.S. Patent No. 7,261,093 (the "'093 Patent") and two disputed terms in Briggs's U.S. Patent No. 6,595,696 (the "'696 Patent"). The parties submitted thorough and well-crafted briefs

and helpful presentations at the *Markman* hearing.  Jurisdiction is proper under 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

## I.   <u>BACKGROUND</u>

Stant manufactures and sells fuel caps for use on small engines, such as lawn mowers, that incorporate carbon to filter the fuel vapor before it can be released into the atmosphere.  Based upon provisional patent and utility patent applications filed with the United States Patent and Trademark Office in July 2004 and July 2005, respectively, the '093 Patent, entitled "Evaporative Emissions Control Fuel Cap," was issued to the inventors in August 2007.  (Filing No. 56-1.)  The '093 Patent was later assigned to and is now owned by Stant.

Briggs is a producer of gasoline engines for outdoor power equipment.  Briggs has also made, used, and/or sold lawn mower engines that include a fuel cap that incorporates carbon particles to control evaporative emissions, which it refers to as "carbon-in-cap" products ("Briggs Fuel Caps").  Briggs has made and sold its carbon-in-cap products since at least 2008.  At least one of the Briggs Fuel Caps appears to be an embodiment of one of the caps shown in Briggs's U.S. Patent No. 8,096,438 ("the Briggs '438 Patent"), which was issued to Briggs on June 3, 2008. Stant alleges that the Briggs Fuel Caps embody Stant's patented inventions of, and infringe at least Claims 1 and 22 of, the '093 Patent.

Briggs has also asserted a counterclaim against Stant for alleged infringement of one if its patents.  The '696 Patent, entitled "Internal Combustion Engine Evaporative Emission Control System," was issued on November 1, 2005.  (Filing No. 55-2.)  Briggs is the assignee of the '696 Patent.  Briggs alleges that one of Stant's fuel caps infringes on Claim 33 of the '696 Patent.

The fuel caps at issue (also referred to as a "closure" or "evaporative emission device" in the patents) contain systems that are designed for the purpose of reducing the amount of

hydrocarbon vapors that are released from evaporated fuel into the atmosphere in both on-road and small/off-road engines.  Such products employ a system of adsorbent material, usually activated carbon, which adsorbs the hydrocarbon molecules.  Adsorbent materials are solid substances upon which an extremely small layer of molecules (such as gasses, solutes, or liquids) adhere to the surfaces of the solid substance by means of "adsorption."  As the liquid fuel in the fuel tank evaporates, the vapor adsorbing material adsorbs hydrocarbons found in hydrocarbon-laden fuel vapors as the vapor is vented from the fuel tank to the atmosphere, resulting in only "scrubbed" or filtered vapor being released into the atmosphere.  As the vapor adsorbing material adsorbs hydrocarbons over an extended period of time, it becomes saturated with, and less able to adsorb, hydrocarbons, causing hydrocarbon-laden fuel vapors to be released into the atmosphere.  Thus, it is necessary to periodically "purge" the vapor adsorbing material of hydrocarbons.  This is done by means of "active purging" and/or "passive purging."  Actively purged evaporative emissions control systems rely on a vacuum created by the operation of the engine to draw atmospheric air through the hydrocarbon-laden vapor adsorbing material, which removes the hydrocarbon from the material and returns it to the engine intake manifold to be combusted by the engine.  By contrast, passively purged evaporative emissions control systems rely on decreases in the pressure within the fuel tank (often as a result of a decrease in ambient air temperature) to draw atmosphere air through the hydrocarbon-laden vapor adsorbing material, returning the hydrocarbons to the fuel tank where the vapor stays until the fuel tank again experiences positive pressure (often as a result in an increase in ambient air temperature).

## II.   LEGAL STANDARD FOR CLAIM CONSTRUCTION

The words of a claim are generally given their ordinary and customary meaning, as understood by a person of skill in the art ("POSA") when the patent was filed.[1] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*). When the ordinary meaning of a claim is disputed, the Federal Circuit has directed courts to look to the patent specification, which is the single best guide to the meaning of a disputed term. *Id*. at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1316. Courts may also consider extrinsic evidence, such as expert testimony or dictionaries, but such evidence is "less significant" than the patent specification and prosecution history (*i.e.* the written history of patentee's prior dealings with the U.S. Patent Office). *Id*. at 1317.

## III.   DISCUSSION

### A.     Stant's '093 Patent Disputed Terms

The parties disagree on the construction of four terms in the '093 Patent in Claims 1 and/or 22: (1) "fuel vapor-conducting passageway" (Claims 1 & 22); (2) whether the first, second, and third directions may contain adsorbent material (Claims 1 & 22); (3) "Fuel vapor passing along the third direction is filtered before exiting the vapor passageway" (Claim 22); and (4) "vapor discharge channel" (Claim 22).

Claim 1 of the '093 Patent states as follows:

An evaporative emissions control system comprising a closure structured to mate with and close a fuel tank filler neck, the closure being formed to include a fuel vapor entry port, an atmospheric air entry port, and a fuel vapor-conducting passageway interconnecting the fuel vapor entry port and the atmospheric air entry

---

[1] The parties have not submitted any stipulations regarding the qualifications of a POSA in this case.

4

port, a hydrocarbon adsorbing filter unit positioned to lie in the fuel vapor-conducting passageway to adsorb hydrocarbon material entrained in fuel vapor passing from the fuel tank filler neck into the fuel vapor-conducting passageway through the fuel vapor entry port to produce a stream of filtered vapor exiting the fuel vapor-conducting passageway through the atmospheric air entry port, and wherein the fuel vapor-conducting passageway from the fuel vapor entry port extends along a first direction, a second direction generally perpendicular to the first direction and through a passageway portion substantially filled with adsorbent material and extending along a third direction different from the first and second directions wherein fuel vapor passes from the fuel tank into the fuel vapor-conducting passageway through the fuel vapor entry port and produces a stream of filtered vapor exiting the fuel vapor-conducting passageway through the atmospheric air port.

([Filing No. 56-1, at ECF p. 13](#)).

Claim 22 of the '093 Patent states as follows:

An evaporative emissions control system comprising a closure structured to mate with and close an open mouth of a filler neck for a fuel tank, the closure including a fuel vapor entry port adapted for communication with fuel vapor within the fuel tank when the closure is mated with the filler neck and a vapor discharge channel in communication with the fuel vapor entry port and adapted to vent vapor through the closure, the fuel vapor entry port and the discharge channel together defining a vapor passageway through the closure, the fuel vapor-conducting passageway extending along a first direction, a second direction generally perpendicular to the first direction and through a passageway portion substantially filled with adsorbent material and extending along a third direction generally parallel to the first direction, and a hydrocarbon adsorbing filter in the vapor passageway so that fuel vapor passing along the third direction is filtered before exiting the vapor passageway.

([Filing No. 56-1, at ECF p. 15](#)).  Each disputed term will be addressed in turn.

**1.    "Fuel vapor-conducting passageway" (Claims 1 & 22)**

| Stant's Construction | Briggs's Construction |
|---|---|
| Plain meaning.  If construction is necessary, Stant proposes the following:<br><br>"Conduct" in this context means "to convey in a channel." | "a passageway that guides hydrocarbon-laden fuel vapor along a defined path from the fuel vapor entry port through the adsorbent material" |

| | |
|---|---|
| "Passageway" means "a way that allows passage" and "passage" means "a way of exit or entrance; a road, path, channel, or course by which something passes."<br><br>Thus, a fuel vapor-conducting passageway is a path, channel, or course by which fuel vapor is conveyed or passes. | |

There are two means by which vapor enters and exits the fuel caps: the fuel vapor entry point, which is where the evaporated fuel enters the cap and where hydrocarbon-laden vapors re-enter the fuel tank, and the atmospheric air entry port, which is where air from the atmosphere enters the cap and where filtered air exits the cap.  At some point in between these two points lies the hydrocarbon adsorbing material.

Briggs proposes that the term "fuel vapor conducting passageway" should be limited such that the passageway begins at the fuel vapor entry point and ends at the adsorbent material, whereas Stant's construction proposes that the passageway begins at the fuel vapor entry port and ends at atmospheric air entry port.  Briggs bases its construction on the specification's reference to Figure 4 (Filing No. 56-1, at ECF p. 6), arguing that the specification indicates that the passageway ends at 66, which points to the carbon filter (*i.e.*, the hydrocarbon adsorbing material).  '093 Patent col. 6:48-65 (Filing No. 56-1, at ECF p. 11).

However, Briggs ignores the plain language of Claim 22, which states, "the fuel vapor entry port and the discharge channel *together* defining a vapor passageway *through* the closure."  '093 Patent col. 13:48-51 (Filing No. 56-1, at ECF p 15) (emphasis added).  It also ignores the plain language in Claim 1, which states, "a fuel vapor-conducting passageway *interconnecting* the fuel vapor entry port and the atmospheric air entry port, a hydrocarbon adsorbing filter unit positioned to *lie in* the fuel vapor-conducting passageway[,]" and "fuel vapor passes from the fuel tank into the fuel vapor-conducting passageway through the fuel vapor entry port and produces a

stream of filtered vapor exiting the fuel vapor-conducting passageway *through* the atmospheric air port." '093 Patent col. 9:23-26; col. 9:39-43 (Filing No. 56-1, at ECF p. 13). It is a basic rule that courts should look to "the words of the claims themselves . . . to define the scope of the patented invention." *Vitronics*, 90 F.3d at 1582. Words in a claim are generally given their ordinary and customary meaning. *Id.* The Court must give the terms emphasized above consideration, as the plain and ordinary meaning indicates that the fuel vapor-conducting passageway connects the vapor entry port and the atmospheric air entry port, meaning that it runs through the entire fuel cap/closure. There is no indication in the claim language that the fuel vapor-conducting passageway ends at the adsorbing material (*i.e.*, the carbon filter) aside from Briggs's interpretation of limitations found in the specifications, and the language of the claims contradict this construction.

In addition, the patent specifications support Stant's construction of this term. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1316 (Fed. Cir. 2005) (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). The description of the patent states, "[c]losure is formed to include a fuel vapor entry port, an atmospheric air entry port, and a fuel vapor-conducting passageway *interconnecting* fuel vapor entry port and atmospheric entry port." '093 Patent col. 6:48-51 (Filing No. 56-1, at ECF p. 11). Again, the specification indicates that the fuel vapor-conducting passageway begins with the fuel vapor entry port, and ends with the atmospheric air entry port. Stant's construction is the most consistent with both the claims and the specifications, and for this reason the Court adopts the construction of "fuel-vapor passageway" as "a path, channel, or course by which fuel vapor is conveyed or passes."

## 2. The First, Second and Third Directions (Claims 1 & 22)

| Stant's Construction | Briggs's Construction |
|---|---|
| "Adsorbent" means "a usually solid substance that adsorbs another substance," "adsorb" means "to take up and hold by "adsorption," and "adsorption" means "the adhesion in an extremely small layer of molecules (as of gases, solutes, or liquids) to the surfaces of solid bodies or liquids with which they are in contact."<br><br>This element means that "the fuel vapor-conducting passageway from the fuel vapor entry port extends (i) along a first direction, (ii) along a second direction that is generally perpendicular to the first direction, and (iii) through a passage way portion (a) largely but not wholly filled with adsorbent material (as defined above) and (b) extending along a third direction different from the first and second directions." | "the fuel vapor conducting passageway from the fuel vapor entry port extends (i) along a first direction *that has substantially no adsorbent material*, (ii) along a second direction that is generally perpendicular to the first direction *and has substantially no adsorbent material*, and (iii) through a passageway portion (a) largely, but not wholly, filled with adsorbent material and (b) extending along a third direction different from the first and second directions" (emphasis added). |

Within the fuel cap, fuel vapor travels along a "circuitous passageway" within which the adsorbent material is located at a point along this route. '093 Patent col 5:43 ([Filing No. 56-1, at ECF p. 11](#)). The dispute with respect to this term is over whether there can be adsorbent material in the first two directions, not just the third direction. Briggs adds the limitation that the first direction and the second direction contain "substantially no adsorbent material," whereas Stant's construction contains no such limitation. Briggs relies upon the patent description in which there is no reference to adsorbent material being in the first or second directions in the embodiment described. '093 Patent col. 5:24-54 ([Filing No. 56-1, at ECF p. 11](#)). However, the language in the claims themselves place no such limitation on the location of the adsorbent material. Claim 1 states, "wherein the fuel vapor-conducting passageway from the fuel vapor entry port extends along a first direction, a second direction generally perpendicular to the first direction and *through a passageway portion substantially filled with adsorbent material and extending along a third*

*direction* different from the first and second directions . . . ." '093 Patent col 9:33-39 ([Filing No. 56-1, at ECF p. 13](#)).  The description of Figure 4 also states that the "charcoal bed **67**" extends along a fourth direction, though there is no mention of this fourth direction in the claims.  '093 Patent col. 5:39-41 ([Filing No. 56-1, at ECF p. 11](#)).

Although claims must be read in conjunction with the specifications, the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips*, 415 F.3d at 1323.  "[M]erely because 'a specification describes only one embodiment does not require that each claim be limited to that one embodiment.'" *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1384 (Fed. Cir. 1998) (quoting *SRI Int'l, Inc. v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 n.14 (Fed. Cir. 1985)).  The description of the preferred embodiment of the '093 Patent does not describe adsorbent material being located in the first or second direction; however, there is no express limitation—in either the specifications or the claims themselves—that the adsorbent material is limited to being located in the third direction.  In fact, the specifications describe the adsorbent material extending into a fourth direction, which is not addressed in the claim.  "[T]he patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims." *Cook Inc. v. Endologix, Inc.*, No. 1:09-CV-1248-TWP-DKL, 2011 WL 3585553, at *2 (S.D. Ind. Aug. 16, 2011) *opinion clarified,* No. 1:09-CV-01248-TWP, 2012 WL 4470217 (S.D. Ind. Sept. 27, 2012) (quoting *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347–48 (Fed. Cir. 2009)).

Therefore, the Court adopts Stant's proposed construction stating "the fuel vapor-conducting passageway from the fuel vapor entry port extends (i) along a first direction, (ii) along a second direction that is generally perpendicular to the first direction, and (iii) through a passage

way portion (a) largely but not wholly filled with adsorbent material and (b) extending along a third direction different from the first and second directions."  However, the Court finds that no additional construction of the term "adsorbent" is necessary, as the plain meaning of this term would be apparent to a POSA.

     **3.**    **"Fuel vapor passing along the third direction is filtered before exiting the vapor passageway" (Claim 22)**

The parties have filed a stipulation with respect to this previously disputed term (Filing No. 72).  Therefore, the Court adopts the proposed agreed construction of "hydrocarbons in the fuel vapor are adsorbed by the adsorbent material (*e.g.*, carbon) when the fuel vapor is passing in the third direction through the fuel-vapor conducting passageway."

     **4.**    **"a vapor discharge channel" (Claim 22)**

| Stant's Construction | Briggs's Construction |
| --- | --- |
| Plain meaning.  If construction is necessary, Stant proposes the following:<br><br>In this context, "channel" means "a usually tubular enclosed passage: CONDUIT" or "a long gutter, groove, or furrow."<br><br>In this context, "discharge" means "to give outlet or vent to."<br><br>Thus, a vapor discharge channel is a passage that serves as an outlet for, or vents, vapor. | "a passage that discharges hydrocarbon-laden vapor that has been purged from the adsorbent material from the closure" |

Briggs's proposed construction adds the limitation that the vapor discharge channel contains only hydrocarbon-laden vapor that has been purged from the adsorbent material, necessarily requiring that the vapor is flowing inward toward the fuel tank.  Stant argues that this construction contradicts the plain language of Claim 22, which states, "the closure including a fuel vapor entry port adapted for communication with fuel vapor within the fuel tank when the closure is mated with the filler neck and a vapor discharge channel in communication with the fuel vapor

entry port and adapted to vent vapor through the closure[.]"   '093 Patent col. 13:43-48 (Filing No. 56-1, at ECF p. 15).

Briggs bases its construction on Claim 2, which is dependent upon (and therefore limits) Claim 1.   Stant argues that Claim 1 describes a passive purging system, whereas Claim 2 describes an active purging system based upon the addition of a tether consisting of a purge hose coupled at one end to the fuel cap, and at the other end to the engine intake manifold.   '093 Patent col. 9:44-54 (Filing No. 56-1, at ECF p. 13).   The purge hose connects the vapor-discharge channel and the engine intake manifold to conduct a stream of fuel vapor to the engine intake manifold; as discussed above, this is the configuration of an actively purged system.   In an actively purged system, the vapor discharge channel would contain hydrocarbon-laden vapor as the vacuum is created by the running engine.   However, Claim 22, like Claim 1, describes a passively purged system where there is no connection to the engine intake manifold, which is what creates the vacuum when the engine is running.   Thus, the comparison to Claim 2 is improper, as it describes a different type of system.

As described in Claim 22, "the fuel vapor entry port and the discharge channel together defin[e] a vapor passageway through the closure[.]"   '093 Patent col. 13:48-50 (Filing No. 56-1, at ECF p. 15).   As discussed above, the proper construction of "vapor passageway" is such that it goes through to the atmospheric air port; thus, filtered air would be discharged into the atmosphere through a vapor discharge channel.   Because fuel vapor can either be discharged into the fuel tank after the hydrocarbons have been purged from the adsorbing material, or discharged into the atmosphere after being filtered through the adsorbing material, it would be improper to limit the construction of this term in Claim 22 to include only hydrocarbon-laden vapor.   The Court finds

that additional construction of this term is not necessary, and therefore adopts the plain meaning of "vapor discharge channel."

**B.      Briggs's '696 Patent Disputed Terms**

The parties disagree on the construction of two terms in Claim 33 of the '696 Patent: (1) "a vent conduit providing fluid communication between the fuel tank and the evaporative emission device;" and (2) "the device volume and the tank volume are sized relative to one another . . . such that a vapor conduit providing fluid communication between the evaporative emission device and an engine intake assembly is eliminated."

Claim 33 of the '696 Patent states as follows:

An evaporative emission control system comprising: an evaporative emission device including a mass of fuel vapor adsorbing material; a fuel tank having a tank volume; an atmospheric vent providing fluid communication between the evaporative emission device and the atmosphere; a vent conduit providing fluid communication between the fuel tank and the evaporative emission device, the vent conduit enabling flow from the fuel tank to the evaporative emission device in response to an increase in pressure within the fuel tank, and enabling flow from the evaporative emission device to the fuel tank in response to a decrease in pressure within the fuel tank; wherein the device volume and the tank volume are sized relative to one another such that substantially no fuel vapor passes from the evaporative emission device to the atmosphere, and such that a vapor conduit providing fluid communication between the evaporative emission device and an engine intake assembly is eliminated.

(Filing No. 55-2, at ECF p. 19).  Each disputed term will be addressed in turn.

1.      **"a vent conduit providing fluid communication between the fuel tank and the evaporative emission device"**

| Stant's Construction | Briggs's Construction |
|---|---|
| A "vent conduit" is a tube, pipe, or hose[2] that vents vapor from the fuel tank to the evaporative emission device. | Briggs proposes that no construction is necessary for the claim term "a vent conduit providing fluid communication between the fuel tank and the evaporative emission device." <br><br> This term should be construed in accordance with its plain and ordinary meaning. |

The parties primarily dispute the meaning of the term "vent conduit" as it appears in Claim 33.  Briggs argues that the plain language is sufficient, whereas Stant wants to define the word "conduit" as a "tube, pipe or hose."  Briggs argues that the plain meaning of the phrase "vent conduit" is readily apparent from the surrounding claim language itself, and would be understood by a POSA.  The claim language explains the function of the "vent conduit:" "enabling flow from the fuel tank to the evaporative emission device in response to an increase in pressure within the fuel tank, and enabling flow from the evaporative emission device to the fuel tank in response to a decrease in pressure within the fuel tank[.]"  '696 Patent col. 11:27 – 12:3 (Filing No. 55-2, at ECF p. 19).  Briggs argues that any structure that serves this function falls within the term "vent conduit."  The specification also supports the plain and ordinary meaning of this term, as the specification describes the vent conduit as "conduct[ing] fuel vapor from the fuel tank to the evaporative emission device."  '696 Patent co. 2:10-11 (Filing No. 55-2, at ECF p. 14).  Courts "generally do not construe claim language to be inconsistent with the clear language of the

---

[2] Stant originally proposed the terms "tube, pipe or other similar structure" in its construction.  However, Stant also stated that it has no objection to replacing the words "similar structure" with "hose" in response to Briggs's objection that the term "or similar structure" is too vague.  Because the Court agrees that the term "or similar structure" is vague, the Court therefore modifies Stant's construction to use the word "hose."

specification; '[u]sually, it is dispositive.'" *ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*, 566 F.3d 1028, 1034 (Fed. Cir. 2009) (quoting *Phillips*, 415 F.3d at 1315).

In support of its construction, Stant cites to the dictionary definition of "conduit," as "a natural or artificial channel through which something (as a fluid) is conveyed" and "a pipe, tube, or tile for protecting electric wires or cables." Filing No. 58, at ECF p. 19 (quoting Merriam-Webster's Collegiate Dictionary (10th ed. 2002) at p. 241.  However, Stant takes its reliance upon the dictionary definition a step further and cites to the definition of "channel" as "a usually tubular enclosed passage: CONDUIT." Filing No. 58, at ECF p. 19 (quoting Merriam-Webster's Collegiate Dictionary (10th ed. 2002) at p. 191.  A tube, pipe and hose are all "tubular enclosed passages."  While courts may look to dictionary definitions in claim construction, *Phillips*, 415 F.3d at 1318, the Court finds that Stant's reliance upon the definition of "channel" to arrive at its proposed construction limiting the term to a "tube, pipe or hose" is unnecessarily restrictive, and is also not supported by the claim or specification language.  The Court concludes that the additional construction of the term "vent conduit" is not necessary, and thus agrees with Briggs that the term should be given its plain and ordinary meaning.

2.  **"the device volume and the tank volume are sized relative to one another . . . such that a vapor conduit providing fluid communication between the evaporative emission device and an engine intake assembly is eliminated"**

| Stant's Construction | Briggs's Construction |
|---|---|
| "compared to a pre-existing system identical in all other respects but including a vapor conduit providing fluid communication between the evaporative emission device and an engine intake assembly, as a result of a change in the device volume and the tank volume relative to one another in the pre-existing system, the accused system does not have such a vapor conduit" | "the device volume and the tank volume are sized relative to one another such that the need for a vapor conduit providing fluid communication between the evaporative emission device and an engine intake assembly is eliminated" |

Briggs's construction of this term adds the words "the need for" to the language in Claim 33 to clarify that the need for a vapor conduit device is eliminated, not the vapor conduit itself. Stant, on the other hand, focuses on the elimination of the vapor conduit itself and proposes a construction that compares a "pre-existing system" to an "accused system" even though none of the specifications nor the claims mention such a limitation.

Briggs's construction is consistent with language in the patent specifications. A description of Figure 5 states:

> The system of FIG. 5 is specifically sized and configured such that *the vapor line is unnecessary*. The system of FIG. 5 is 'passively purged' . . . such that the fuel tank, the vent line and the evaporative control device cooperate to store (*e.g.* through adsorption) fuel vapors resulting from the evaporation of the liquid fuel in the fuel tank[.]

'696 Patent col. 6:34-40 ([Filing No. 55-2, at ECF p. 16](#)) (emphasis added). It is reasonable to construe "vapor line" as a form of "vapor conduit," as the definition of "line" includes "piping for conveying a fluid (as steam)." Merriam-Webster Dictionary online (http://www.merriam-webster.com/dictionary/line). The specifications indicate that such a line would be unnecessary in this type of configuration. Stant's argument relies simply upon their self-devised "logic" and does not cite to any other support in the patent itself or otherwise to require a comparison to a "pre-existing" or "accused" system.

Because Briggs's construction of Claim 33 is consistent with the specifications, and because there is no basis for the limitations proposed by Stant, the Court adopts Briggs's construction of "the device volume and the tank volume are sized relative to one another such that the need for a vapor conduit providing fluid communication between the evaporative emission device and an engine intake assembly is eliminated."

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the disputed claim terms have the meaning set out in this

Order.

**SO ORDERED.**

Date: 8/25/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Amy L. DeWitt
ARNOLD & PORTER LLP
amy.dewitt@aporter.com

Marc A. Cohn
ARNOLD & PORTER LLP
marc.cohn@aporter.com

Matthew M. Wolf
ARNOLD & PORTER LLP
matthew.wolf@aporter.com

William Z. Louden
ARNOLD & PORTER LLP
william.louden@aporter.com

Lynn C. Tyler
BARNES & THORNBURG
lynn.tyler@btlaw.com

Joel Thaddeus Larson, Jr.
BARNES & THORNBURG LLP
Joel.Larson@btlaw.com

David J. Hensel
PENCE HENSEL LLC
dhensel@pencehensel.com